

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
By: KATHLEEN A. ZEBROWSKI
Assistant United States Attorney
86 Chambers St.
New York, New York 10007
Telephone No.: (212) 637-2710
FAX No.: (212) 637-2717



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x

UNITED STATES OF AMERICA,     :

              Plaintiff,     :         COMPLAINT

                     :         08 Civ.

      -v.-            :

L.A.C.A. STATE OF NEW YORK, INC.

             Defendant.    :

-----------------------------------------------------x

Plaintiff United States of America ("the United States"), by its attorney, Michael

J. Garcia, United States Attorney for the Southern District of New York, for its complaint,

alleges upon information and belief as follows:

<u>NATURE OF ACTION</u>

1.     This is an action to recover money due and owing the United States by L.A.C.A.

State of New York, Inc. (the "defendant"), pursuant to a Forfeiture Order issued by the Federal

Communications Commission (the "FCC" or the "Commission"), pursuant to 47 U.S.C. § 503 <u>et</u>

<u>seq.</u>, in <u>In the Matter of L.A.C.A. , State of New York, Inc.</u>, File No.: EB-03-NY-125.

JURISDICTION AND VENUE

2.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1345 and 1355, and 47 U.S.C. §§ 503 and 504(a).

3.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b).

THE PARTIES

4.    Plaintiff United States is a sovereign and body politic.  The FCC is a regulatory agency that regulates interstate and foreign commerce in communication by wire and radio and is charged with the duty of enforcing and executing the provisions of Chapter 5, Title 47 of the United States Code, as amended.

5.    Defendant is located at 1112 Garrison Avenue, Bronx, New York, 10474, within the Southern District of New York.

FACTUAL ALLEGATIONS AND CLAIM FOR RELIEF

6.    On or about June 21, 2003, the FCC New York Office received complaints about an unauthorized broadcast station operating in Bronx, New York on the frequency 96.1 megahertz ("MHZ"), and causing interference to a FCC licensed radio station operating on the frequency 96.3 MHZ.

7.    On or about June 21, 2003, a Commission agent, using a mobile direction finding vehicle, monitored the frequency 96.1 MHZ in the Bronx, New York, observed an unauthorized radio broadcast on 96.1 MHZ, and positively traced the source of interference to a FM broadcast antenna on the roof of 1112 Garrison Avenue, Bronx, New York 10474.

2

8. On or about June 21, 2003, a Commission agent conducted a station inspection with Reverend Fernando Rodriguez ("Rev. Rodriguez"), president of L.A.C.A., who acknowledged the operation of the unlicensed radio station.

9. On or about June 21, 2003, a Commission agent advised Rev. Rodriguez that the station on 96.1 MHZ was causing interference to an FCC licensed station operating on 96.3 MHZ.

10. There was no evidence of FCC authorization for a station operation at 96.1 MHZ, as described in paragraphs 6 through 10.

11. On or about June 23, 2003, the FCC New York Office sent – by fax and first-class mail – defendant a Warning Letter for unlicensed operation on frequency 96.1 MHZ. In a telephone conversation with a Commission agent on or about June 25, 2003, Rev. Rodriguez acknowledged receipt of the faxed copy of the Warning Letter.

12. The FCC New York Office did not receive a written reply to the Warning Letter.

13. On or about June 26, 2003, a Commission agent, using a mobile direction finding vehicle, monitored the frequency of 96.1 MHZ in Bronx, New York, observed an unauthorized radio broadcast on 96.1 MHZ, and positively determined the source of the broadcast to be a FM broadcast antenna on the roof of 1112 Garrison Avenue, Bronx, New York 10474.

14. On or about August 4, 2003, the FCC New York Office received a fax complaint letter from an FCC licensed station in New York, New York concerning interference to their broadcast on 96.3 MHZ from a station in Bronx, New York, transmitting on 96.1 MHZ.

15. On or about August 6, 2003, an agent from the FCC New York Office contacted Rev. Rodriguez by telephone and advised him of the complaint of interference caused from a station operating on 96.1 MHZ in Bronx, New York.

3

16.    On or about September 22, 2003, the FCC New York Office received another fax complaint letter from an FCC licensed station in New York, New York concerning interference to their broadcast on 96.3 MHZ from a station in Bronx, New York, transmitting this time on 96.5 MHZ.

17.    On or about September 22, 2003, Commission agents, using a mobile direction finding vehicle, monitored the frequency of 96.5 MHZ in Bronx, New York, observed unauthorized radio broadcast on 96.5 MHZ, and positively determined the source of the broadcast to be a FM broadcast antenna on the roof of 1112 Garrison Avenue, Bronx, New York 10474.

18.    On or about September 27, 2003, Commission agent, using a mobile direction finding vehicle, monitored the frequency 96.5 MHZ in the Bronx, New York, observed an unauthorized radio broadcast on 96.5 MHZ, and positively traced the source of interference to a FM broadcast antenna on the roof of 1112 Garrison Avenue, Bronx, New York 10474.

19.    On or about September 27, 2003, Commission agents conducted a station inspection with Rev. Rodriguez and advised him that the station operation was again causing interference to an FCC licensed station operating on 96.3 MHZ.

20.    There was no evidence of FCC authorization for a station operation described in paragraphs 16 through 19.

21.    On February 24, 2004, the FCC, by the District Director of the New York Office, Enforcement Bureau, issued a Notice of Apparent Liability For Forfeiture (the "Notice") against the defendant in the amount of $10,000.00 for willfully and repeatedly operating a base station and mobile units on an unauthorized frequency in violation of Sections 0.111, 0.311 and 1.80 of

the Commission's Rules, 47 C.F.R. § 1.903. A true and correct copy of the Notice and the certified mail return receipt is attached hereto as Exhibit A and made a part hereof.

22.    The Notice further instructed that within thirty days of the issuing the Notice (i.e., thirty days from February 24, 2004), the defendant should either pay the full amount of the proposed forfeiture or file a written statement seeking a reduction or cancellation of the proposed forfeiture.

23.    The defendant did not pay the amount demanded pursuant to the Notice or file a timely response with the FCC.

24.    On May 20, 2004, the FCC, by the Chief of the Enforcement Bureau, issued a Forfeiture Order which provided for a monetary forfeiture in the amount of $10,000.00 for willful and repeated violations of Sections 0.111, 0.311 and 1.80 of the Commissions's Rules (the "Forfeiture Order"). A true and correct copy of the Forfeiture Order and the certified mail return receipt are attached hereto as Exhibit B and made a part hereof.

25.    The Forfeiture Order informed the defendant that full payment was due within thirty days of issuing the Order (i.e., thirty days from May 20, 2004).

26.    The defendant did not pay the amount demanded pursuant to the Forfeiture Order and by letter dated September 22, 2004, the FCC demanded payment in full within thirty days. A true and correct copy of the letter is attached hereto as Exhibit C and made a part hereof.

27.    Despite due demand, the defendant has failed to make any payment toward the Forfeiture Order.

28.    A Certificate of Forfeiture from the FCC is attached hereto as Exhibit D and made a part hereof.

WHEREFORE, plaintiff United States demands judgment against the defendant in the amount of $10,000.00, with interest accruing from the date of judgment as provided by law and for such further relief as the Court may deem proper.

Dated: New York, New York
     May 15 , 2008

               Respectfully submitted,

               MICHAEL J. GARCIA
               United States Attorney for the
               Southern District of New York
               Attorney for the United States of America

By: _____
               KATHLEEN A. ZEBROWSKI
               Assistant United States Attorney
               86 Chambers St.
               New York, New York 10007
               Telephone No.: (212) 637-2710
               FAX No.: (212) 637-2717

**EXHIBIT A**



Federal Communications Commission

Before the
Federal Communications Commission
Washington, D.C. 20554

| | | |
|---|---|---|
| In the Matter of | ) | |
| | ) | File No. EB-03-NY-125 |
| | ) | |
| L.A.C.A., State of New York, Inc. | ) | |
| | ) | NAL/Acct. No. 200432380007 |
| Bronx, NY | ) | |
| | ) | FRN: 0007 8304 58 |

## NOTICE OF APPARENT LIABILITY FOR FORFEITURE

**Released:  February 24, 2004**

By the District Director, New York Office, Enforcement Bureau:

## I. INTRODUCTION

1.     In this Notice of Apparent Liability for Forfeiture ("NAL"), we find that L.A.C.A., State of New York, Inc. ("L.A.C.A.") has apparently violated Section 301 of the Communications Act of 1934, as amended, ("Act")[1], by operating an unlicensed radio transmitter on the frequencies 96.1 MHz and 96.5 MHz. We conclude that L.A.C.A. is apparently liable for a forfeiture in the amount of ten thousand dollars ($10,000).

## II. BACKGROUND

2.     On June 19, 2003, the New York Office received complaints about an illegal broadcast station located in Bronx, NY, operating on the frequency 96.1 MHz, and causing interference to a FCC licensed radio station in New York, NY, operating on the frequency 96.3 MHz.

3.     On June 21, 2003, a Commission agent, using a mobile direction-finding vehicle, monitored the frequency 96.1 MHz in Bronx, NY.  The agent observed an unauthorized radio broadcast on 96.1 MHz, and positively determined the source of the broadcast to a FM broadcast antenna on the roof of 1112 Garrison Avenue, Bronx, NY 10474.  The agent then conducted a station inspection with Rev. Fernando Rodriguez, president of L.A.C.A., who acknowledged the operation of the unlicensed radio station.  The agent advised Rev. Rodriguez that the station on 96.1 MHz was causing interference to an FCC licensed station operating on 96.3 MHz.  There was no evidence of a Commission authorization for this operation in Bronx, NY.

4.     On June 23, 2003, the New York Office sent a Warning Letter, by Fax, First Class Mail and Certified Mail Return Receipt Requested, to L.A.C.A. for unlicensed operation on the frequency 96.1 MHz. In a June 25, 2003, telephone call with a Commission agent, Rev. Rodriguez acknowledged receipt of the faxed copy of the Warning Letter.  The New York Office did not receive a written reply to the Warning Letter.

---

[1] 47 U.S.C. § 301.

Federal Communications Commission

5.    On June 26, 2003, a Commission agent, using a mobile direction-finding vehicle, monitored the frequency 96.1 MHz in Bronx, NY, observed unauthorized radio broadcast on 96.1 MHz, and positively determined the source of the broadcast to a FM broadcast antenna on the roof of 1112 Garrison Avenue, Bronx, NY 10474.

6.    On August 4, 2003, the New York Office received a fax complaint letter from an FCC licensed station, in New York, NY, concerning interference to their broadcast on 96.3 MHz from a station in Bronx, NY, transmitting on 96.1 MHz.

7.    On August 6, 2003, an agent from the FCC New York Office contacted Rev. Rodriguez by telephone and advised him of the complaint of interference being caused from a station operating on 96.1 MHz in Bronx, NY.

8.    On September 22, 2003, the New York Office received another fax complaint letter from a FCC licensed station in New York, NY, concerning interference to their broadcast signal on 96.3 MHz, from a station in Bronx, NY, transmitting on 96.5 MHz.

9.    On September 22, 2003, Commission agents, using a mobile direction-finding vehicle, monitored the frequency 96.5 MHz in the Bronx, NY, and observed an unauthorized radio broadcast on 96.5 MHz, and positively determined the source of the broadcast to a FM broadcast antenna on the roof of 1112 Garrison Avenue, Bronx, NY 10474.

10.    On September 27, 2003, Commission agents, using a mobile direction-finding vehicle, monitored the frequency 96.5 MHz in Bronx, NY, and observed an unauthorized radio broadcast on 96.5 MHz, and positively determined the source of the broadcast to a FM broadcast antenna on the roof of 1112 Garrison Avenue, Bronx, NY 10474. The agents conducted a station inspection with Rev. Rodriguez and advised him of the station operation that was again causing interference to an FCC licensed station operating on 96.3 MHz. There was no evidence of a Commission authorization for this operation in Bronx, NY.

### III. DISCUSSION

11.    Section 301 of the Act sets forth generally that no person shall use or operate any apparatus for the transmission of energy or communications or signals by radio within the United States except under and in accordance with the Act and with a license granted under the provisions of the Act.

12.    Based on the evidence before us, we find that L.A.C.A. willfully[2] and repeatedly[3] operated radio transmission equipment on: 96.1 MHz on June 21, 2003 and June 26, 2003; 96.5 MHz on September 22,

---

[2] Section 312(f)(1) of the Act, 47 U.S.C. 312(f)(1), which applies to Section 503(b) of the Act, provides that "[t]he term 'willful', when used with reference to the commission or omission of any act, means the conscious and deliberate commission or omission of such act, irrespective of any intent to violate any provision of this Act ...." *See Southern California Broadcasting Co.*, 6 FCC Rcd 4387 (1991).

[3] Section 312(f)(2), which also applies to Section 503(b), provides: [t]he term "repeated", when used with reference to the commission or omission of any act, means the commission or omission of such act more than once or, if such commission or omission is continuous, for more than one day.



### Federal Communications Commission

2003 and September 27, 2003, without a Commission authorization, in violation of Section 301 of the Act. A review of Commission's records showed that there was no evidence of a Commission authorization to operate this station on the frequencies, 96.1 MHz or 96.5 MHz in Bronx, NY.

13.     *The Commission's Forfeiture Policy Statement and Amendment of Section 1.80 of the Rules to Incorporate the Forfeiture Guidelines*, 12 FCC Rcd 17087, 17113 (1997), *recon. denied*, 15 FCC Rcd 303(1999) ("*Forfeiture Policy Statement*")[4], sets the base forfeiture amount for operation without an instrument of authorization for the service at $10,000. In assessing the monetary forfeiture amount, we must take into account the statutory factors set forth in Section 503(b)(2)(D) of the Act[5], which include the nature, circumstances, extent, and gravity of the violation, and with respect to the violator, the degree of culpability, any history of prior offenses, ability to pay, and other such matters as justice may require. Applying the *Forfeiture Policy Statement* and the statutory factors to the instant case and applying the inflation adjustments, we believe that a ten thousand dollar ($10,000) monetary forfeiture is warranted.

## IV.   ORDERING CLAUSES

14.     Accordingly, IT IS ORDERED THAT, pursuant to Section 503(b) of the Act[6] and Sections 0.111, 0.311 and 1.80 of the Commission's Rules[7], L.A.C.A. is hereby NOTIFIED of their APPARENT LIABILITY FOR A FORFEITURE in the amount of ten thousand dollars ($10,000) for willfully and repeatedly violating Section 301 of the Act.

15.     IT IS FURTHER ORDERED THAT, pursuant to Section 1.80 of the Commission's Rules, within thirty days of the release date of this NOTICE OF APPARENT LIABILITY, L.A.C.A SHALL PAY the full amount of the proposed forfeiture or SHALL FILE a written statement seeking reduction or cancellation of the proposed forfeiture.

16.     Payment of the forfeiture may be made by mailing a check or similar instrument, payable to the order of the Federal Communications Commission, to the Forfeiture Collection Section, Finance Branch, Federal Communications Commission, P.O. Box 73482, Chicago, Illinois 60673-7482. The payment should note the NAL/Acct. No. 200432380007 and FRN: 0007 8304 58.

17.     Any response to this NAL must be mailed to Federal Communications Commission, Spectrum Enforcement Division, 445 12th Street, S.W., Washington, D.C. 20554, and MUST INCLUDE THE NAL/Acct. No. 200432380007.

18.     The Commission will not consider reducing or canceling a forfeiture in response to a claim of inability to pay unless the petitioner submits: (1) federal tax returns for the most recent three-year period; (2) financial statements prepared according to generally accepted accounting practices ("GAAP"); or (3) some other reliable and objective documentation that accurately reflects the petitioner's current financial status.

---

[4] 47 C.F.R. § 1.80.

[5] 47 U.S.C. § 503(b)(2)(D).

[6] 47 U.S.C. § 503(b).

[7] 47 C.F.R. §§ 0.111, and 0.311.

**Federal Communications Commission**

Any claim of inability to pay must specifically identify the basis for the claim by reference to the financial documentation submitted.

19.    Requests for payment of the full amount of this Notice of Apparent Liability under an installment plan should be sent to: Chief, Revenue and Receivable Operations Group, 445 12th Street, S.W., Washington, D.C. 20554.[8]

20.    Under the Small Business Paperwork Relief Act of 2002, Pub L. No. 107-198, 116 Stat. 729 (June 28, 2002), the FCC is engaged in a two-year tracking process regarding the size of entities involved in forfeitures. If you qualify as a small entity and if you wish to be treated as a small entity for tracking purposes, please so certify to us within thirty (30) days of this NAL, either in your response to the NAL or in a separate filing to be sent to the Spectrum Enforcement Division. Your certification should indicate whether you, including your parent entity and its subsidiaries, meet one of the definitions set forth in the list provided by the FCC's Office of Communications Business Opportunities (OCBO) set forth in Attachment A of this Notice of Apparent Liability. This information will be used for tracking purposes only. Your response or failure to respond to this question will have no effect on your rights and responsibilities pursuant to Section 503(b) of the Communications Act. If you have questions regarding any of the information contained in Attachment A, please contact OCBO at (202) 418-0990.

21.    IT IS FURTHER ORDERED THAT a copy of this NOTICE OF APPARENT LIABILITY shall be sent by Certified Mail Return Receipt Requested to L.A.C.A., 1112 Garrison Avenue, Bronx, NY 10474.

FEDERAL COMMUNICATIONS COMMISSION

Daniel W. Noel
District Director
New York Office

Attachment A – FCC Condensed List of Small Entities, October 2002

---

[8] See 47 C.F.R. § 1.1914.

 

October 2002

ATTACHMENT A

# FCC List of Small Entities

As described below, a "small entity" may be a small organization,
a small governmental jurisdiction, or a small business.

## (1) Small Organization

Any not-for-profit enterprise that is independently owned and operated and
is not dominant in its field.

## (2) Small Governmental Jurisdiction

Governments of cities, counties, towns, townships, villages, school districts, or
special districts, with a population of less than fifty thousand.

## (3) Small Business

Any business concern that is independently owned and operated and
is not dominant in its field, *and* meets the pertinent size criterion described below.

| Industry Type | Description of Small Business Size Standards |
|---|---|
| **Cable Services or Systems** | |
| Cable Systems | Special Size Standard – **Small Cable Company** has 400,000 Subscribers Nationwide or Fewer |
| Cable and Other Program Distribution | |
| Open Video Systems | $12.5 Million in Annual Receipts or Less |
| **Common Carrier Services and Related Entities** | |
| Wireline Carriers and Service providers | |
| Local Exchange Carriers, Competitive Access Providers, Interexchange Carriers, Operator Service Providers, Payphone Providers, and Resellers | 1,500 Employees or Fewer |

**Note:** With the exception of Cable Systems, all size standards are expressed in either millions of dollars
or number of employees and are generally the average annual receipts or the average employment of a firm.
Directions for calculating average annual receipts and average employment of a firm can be found in
13 CFR 121.104 and 13 CFR 121.106, respectively.

| International Services | |
|---|---|
| International Broadcast Stations | $12.5 Million in Annual Receipts or Less |
| International Public Fixed Radio (Public and Control Stations) | |
| Fixed Satellite Transmit/Receive Earth Stations | |
| Fixed Satellite Very Small Aperture Terminal Systems | |
| Mobile Satellite Earth Stations | |
| Radio Determination Satellite Earth Stations | |
| Geostationary Space Stations | |
| Non-Geostationary Space Stations | |
| Direct Broadcast Satellites | |
| Home Satellite Dish Service | |
| **Mass Media Services** | |
| Television Services | $12 Million in Annual Receipts or Less |
| Low Power Television Services and Television Translator Stations | |
| TV Auxiliary, Special Broadcast and Other Program Distribution Services | |
| Radio Services | $6 Million in Annual Receipts or Less |
| Radio Auxiliary, Special Broadcast and Other Program Distribution Services | |
| Multipoint Distribution Service | Auction Special Size Standard – **Small Business** is less than $40M in annual gross revenues for three preceding years |
| **Wireless and Commercial Mobile Services** | |
| Cellular Licensees | 1,500 Employees or Fewer |
| 220 MHz Radio Service – Phase I Licensees | |
| 220 MHz Radio Service – Phase II Licensees | Auction special size standard - **Small Business** is average gross revenues of $15M or less for the preceding three years (includes affiliates and controlling principals) **Very Small Business** is average gross revenues of $3M or less for the preceding three years (includes affiliates and controlling principals) |
| 700 MHZ Guard Band Licensees | |
| Private and Common Carrier Paging | |
| Broadband Personal Communications Services (Blocks A, B, D, and E) | 1,500 Employees or Fewer |
| Broadband Personal Communications Services (Block C) | Auction special size standard - **Small Business** is $40M or less in annual gross revenues for three previous calendar years **Very Small Business** is average gross revenues of $15M or less for the preceding three calendar years (includes affiliates and persons or entities that hold interest in such entity and their affiliates) |
| Broadband Personal Communications Services (Block F) | |
| Narrowband Personal Communications Services | |

| | |
|---|---|
| Rural Radiotelephone Service | 1,500 Employees or Fewer |
| Air-Ground Radiotelephone Service | |
| 800 MHz Specialized Mobile Radio | Auction special size standard - |
| 900 MHz Specialized Mobile Radio | **Small Business** is $15M or less average annual gross revenues for three preceding calendar years |
| Private Land Mobile Radio | 1,500 Employees or Fewer |
| Amateur Radio Service | N/A |
| Aviation and Marine Radio Service | 1,500 Employees or Fewer |
| Fixed Microwave Services | |
| Public Safety Radio Services | **Small Business** is 1,500 employees or less **Small Government Entities** has population of less than 50,000 persons |
| Wireless Telephony and Paging and Messaging | 1,500 Employees or Fewer |
| Personal Radio Services | N/A |
| Offshore Radiotelephone Service | 1,500 Employees or Fewer |
| Wireless Communications Services | **Small Business** is $40M or less average annual gross revenues for three preceding years **Very Small Business** is average gross revenues of $15M or less for the preceding three years |
| 39 GHz Service | |
| Multipoint Distribution Service | Auction special size standard (1996) – **Small Business** is $40M or less average annual gross revenues for three preceding calendar years **Prior to Auction** – **Small Business** has annual revenue of $12.5M or less |
| Multichannel Multipoint Distribution Service | $12.5 Million in Annual Receipts or Less |
| Instructional Television Fixed Service | |
| Local Multipoint Distribution Service | Auction special size standard (1998) – **Small Business** is $40M or less average annual gross revenues for three preceding years **Very Small Business** is average gross revenues of $15M or less for the preceding three years |
| 218-219 MHZ Service | First Auction special size standard (1994) – **Small Business** is an entity that, together with its affiliates, has no more than a $6M net worth and, after federal income taxes (excluding carryover losses) has no more than $2M in annual profits each year for the previous two years **New Standard** – **Small Business** is average gross revenues of $15M or less for the preceding three years (includes affiliates and persons or entities that hold interest in such entity and their affiliates) **Very Small Business** is average gross revenues of $3M or less for the preceding three years (includes affiliates and persons or entities that hold interest in such entity and their affiliates) |
| Satellite Master Antenna Television Systems | $12.5 Million in Annual Receipts or Less |
| 24 GHz – Incumbent Licensees | 1,500 Employees or Fewer |
| 24 GHz – Future Licensees | **Small Business** is average gross revenues of $15M or less for |



| | the preceding three years (includes affiliates and persons or entities that hold interest in such entity and their affiliates) **Very Small Business** is average gross revenues of $3M or less for the preceding three years (includes affiliates and persons or entities that hold interest in such entity and their affiliates) |
|---|---|
| *Miscellaneous* | |
| On-Line Information Services | $18 Million in Annual Receipts or Less |
| Radio and Television Broadcasting and Wireless Communications Equipment Manufacturers | 750 Employees or Fewer |
| Audio and Video Equipment Manufacturers | |
| Telephone Apparatus Manufacturers (Except Cellular) | 1,000 Employees or Fewer |
| Medical Implant Device Manufacturers | 500 Employees or Fewer |
| Hospitals | $29 Million in Annual Receipts or Less |
| Nursing Homes | $11.5 Million in Annual Receipts or Less |
| Hotels and Motels | $6 Million in Annual Receipts or Less |
| Tower Owners | (See Lessee's Type of Business) |

May-13-04 11:49A FCC  NEW YORK, NY                                    P.02



U.S. Postal Service™
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

NAL BRONX, NY 10474

| | | |
|---|---|---|
| Postage | $ 0.60 | UNIT ID: 0058 |
| Certified Fee | 2.30 | |
| Return Receipt Fee (Endorsement Required) | 1.75 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | | Clerk: KGK2YX |
| Total Postage & Fees | $ 4.65 | 02/24/04 |

Sent To     L.A.C.A.

Street, Apt. No.
or PO Box No.  1112 GARRISON AVENUE

City, State, ZIP+4  BRONX, NY 10474

PS Form 3800, June 2002          See Reverse for Instructions

7003 0500 0002 3197 9946

May-11-04  11:50A FCC  NEW YORK, NY                                P.03



UNITED STATES POSTAL SERVICE

NAL:RE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

**FEDERAL COMMUNICATIONS COMMISSION**
**201 VARICK STREET / ROOM 1151**
**NEW YORK, NY  10014-4870**

**EXHIBIT B**



Federal Communications Commission                                    DA 04-1402

Before the
Federal Communications Commission
Washington, D.C. 20554

| | |
|---|---|
| In the Matter of | ) |
| | ) |
| L.A.C.A., State of New York, Inc. | )    File No.: EB-03-NY-125 |
| | )    NAL/Acct. No. 200432380007 |
| Bronx, New York | )    FRN 0007 8304 58 |
| | ) |

## FORFEITURE ORDER

**Adopted: May 17, 2004**                                **Released: May 20, 2004**

By the Chief, Enforcement Bureau:

1.      In this *Forfeiture Order* ("*Order*"), we issue a monetary forfeiture in the amount of ten thousand dollars ($10,000) to L.A.C.A., State of New York, Inc. ("L.A.C.A.") for willful and repeated violation of Section 301 of the Communications Act of 1934, as amended ("Act").[1]  The noted violation involves L.A.C.A. operating a radio station on the frequencies of 96.1 MHz and 96.5 MHz without Commission authorization.

2.      On February 24, 2004, the District Director of the Commission's New York, New York Field Office ("New York Office") issued a *Notice of Apparent Liability for Forfeiture* ("*NAL*") in the amount of $10,000 to L.A.C.A.[2]  L.A.C.A. has not filed a response to the *NAL*.  Based on the information before us, we affirm the forfeiture.

3.      **ACCORDINGLY, IT IS ORDERED** that, pursuant to Section 503(b) of the Act,[3] and Sections 0.111, 0.311 and 1.80(f)(4) of the Commission's Rules ("Rules"),[4] L.A.C.A., State of New York, Inc. **IS LIABLE FOR A MONETARY FORFEITURE** in the amount of $10,000 for willfully and repeatedly violating Section 301 of the Act.

4.      Payment of the forfeiture shall be made in the manner provided for in Section 1.80 of the Rules within 30 days of the release of this *Order*.  If the forfeiture is not paid within the period specified, the case may be referred to the Department of Justice for collection pursuant to Section 504(a) of the Act.[5]  Payment shall be made by mailing a check or similar instrument, payable to the order of the "Federal Communications Commission," to the Federal Communications Commission, P.O. Box 73482, Chicago, Illinois 60673-7482.  The payment should note NAL/Acct. No. 200432380007 and

---

[1] 47 U.S.C. § 301.

[2] *Notice of Apparent Liability for Forfeiture,* NAL/Acct. No. 200432380007 (Enf. Bur., New York Office, released February 24, 2004).

[3] 47 U.S.C. § 503(b).

[4] 47 C.F.R. §§ 0.111, 0.311, 1.80(f)(4).

[5] 47 U.S.C. § 504(a).



Federal Communications Commission                     DA 04-1402

FRN 0007 8304 58. Requests for full payment under an installment plan should be sent to: Chief, Revenue and Receivables Operations Group, 445 12th Street, S.W., Washington, D.C. 20554.[6]

7.     **IT IS FURTHER ORDERED** that a copy of this *Order* shall be sent by first class mail and certified mail return receipt requested, to L.A.C.A., State of New York, Inc., 1112 Garrison Avenue, Bronx, New York 10474.

FEDERAL COMMUNICATIONS COMMISSION

David H. Solomon
Chief, Enforcement Bureau

---

[6] *See* 47 C.F.R. § 1.1914.

**EXHIBIT C**



# FEDERAL COMMUNICATIONS COMMISSION
# OFFICE OF GENERAL COUNSEL

September 22, 2004

L.A.C.A., State of New York, Inc.
1112 Garrison Avenue
Bronx, New York  10474

NAL No. 200432380007

Dear Sir or Madam:

On February 24, 2004, the Enforcement Bureau, Federal Communications Commission, issued a Notice of Apparent Liability For Forfeiture against L.A.C.A., State of New York, Inc. in the amount of $10,000.00 for the violation of Section 301 of the Communications Act, 47 U.S.C. § 301.  On May 20, 2004, the Enforcement Bureau issued a Forfeiture Order affirming the forfeiture amount. This is to inform you that if the forfeiture is not paid within 30 days of the date of this letter, the matter will be referred to the Department of Justice for enforcement.

Payment may be made by check payable to the Federal Communications Commission. Please write on the check the NAL number noted above and mail your check along with a copy of this letter to:

> Federal Communications Commission
> P.O. Box 73482
> Chicago IL  60673-7482

Thank you.

Sincerely,

Susan L. Launer
Deputy Associate General Counsel

**EXHIBIT D**

# FEDERAL COMMUNICATIONS COMMISSION
## WASHINGTON, D.C.

## CERTIFICATE OF FORFEITURE

**Violator(s) Name(s) and**          L.A.C.A. State of New York, Inc.
**Address(es):**                     1112 Garrison Avenue
                                     Bronx, New York 10474

**Total forfeiture assessed by FCC as of** September 22, 2004 **in the amount of** $10,000.00.
I certify that Federal Communications Commission records show that the violator named above
has been ordered to pay to the United States the amount stated above.

This claim arose in connection with:

    Notice of Apparent Liability For Forfeiture released February 24, 2004
    Forfeiture Order released May 20, 2004

**CERTIFICATION:** Pursuant to 28 USC § 1746, I certify under penalty of perjury that the
foregoing is true and correct.

_5/13/08_
(Date)

Susan L. Launer
Deputy Associate General Counsel